IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Link Investment Co., § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO.: |
| v. § | |
| § | IN ADMIRALTY, Rule 9(h) |
| Jiangsu Steamship Pte. Ltd., § | |
| § | |
| Defendant, § | |
| § | |
| and § | |
| § | |
| Standard Chartered Bank, § | |
| § | |
| Garnishee. § | |

**VERIFIED COMPLAINT AND REQUEST FOR ISSUANCE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT**

Plaintiff Link Investment Co. ("Link"), pursuant to Supplemental Admiralty and Maritime Rule B, files this *Verified Complaint* against Defendant Jiangsu Steamship Pte Ltd ("Jiangsu") and Garnishee Standard Chartered Bank ("Standard"), requesting issue of a writ of maritime garnishment and attachment to be issued for property that is currently or will be held by Jiangsu in this District, including but not limited to the account held by Standard belonging to Jiangsu, and alleges as follows:

**JURISDICTION AND VENUE**

1.  This is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and 28 U.S.C. § 1333, and is brought to obtain security for ongoing maritime arbitration in London, pursuant to 9 U.S.C. § 8.

2.  Venue is proper in this jurisdiction, as the property of Jiangsu is located within this District.

3. Jiangsu is not present in this District for the purposes of Supplemental Rule B.

## PARTIES

4. Link is a foreign business entity organized and existing under the laws of Liberia. At all material times, Link was the registered owner of the M/V ALPHA ERA, IMO 9220992 (the "Vessel").

5. Jiangsu is a foreign business entity organized and existing under the laws of Singapore, with a registered address at 8 Eu Tong Sen Street #15-96, the Central 059818 Singapore. At all material times, Jiangsu was the time charterer of the Vessel under a time charter dated April 16, 2020, on the NYPE 1946 form, between Link and Jiangsu (the "Charter").

6. Garnishee Standard is an international bank with offices in Singapore and with its registered agent in this District which, on infomraiton and belief as detailed below, Link reasonably believes holds accounts which are the property of and/or owing to Jiangsu.

## FACTS

7. On April 16, 2020, Link and Jiangsu (the "Contracting Parties") entered into the Charter, wherein they agreed that Jiangsu would take the Vessel for a one-time charter trip from East Coast Australia to Singapore—Japan range via safe ports, with a cargo of coal in bulk.

The Charter provided *inter alia* as follows:

> *"Duration about 45-55 days without guarantee"*
>
> *"Vessel... to be employed, in carrying lawful merchandise..."*
>
> *"4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of USD 6,000 per day or pro rata including overtime for first 50 days. Thereafter (51 days) hire to be adjusted to USD 7,000 per day or pro rata including overtime...."*

*"12. That the Captain shall use diligence in caring for the ventilation of the cargo."*

*"17. That should any dispute arise between Owners and the Charterers, the matter in dispute however, shall be referred to arbitration in London..."*

*"18. That the Owners shall have a lien upon all cargoes, and all sub-freights and/or sub-hires for any amounts due under this Charter, including General Average contributions, ...."*

*"Clause 34 – Permitted Cargo*
*With harmless coal in bulk which to be of a type having a history of shipment under similar circumstances without problems arising from methane emissions or spontaneous heating."*

*"Clause 35 – Trading*

*1. Trading shall always be via safe port(s)...*
*...*

*However, if there is any breach of Charter and Charterers' obligations to provide a safe cargo, then the Charterers shall be responsible for all consequences and any loss of time and/or expenses resulting therefrom, including the cost of the Protection and Indemnity surveyor, will be for Charterers' sole account."*

*"Final Form Standard SBCL Charter Party Clause*

*Solid bulk cargoes are to be presented for carriage, loaded and, where necessary, trimmed only if lawful and harmless..."*

*"International Maritime Sold Bulk Cargo Code*

*Solid bulk cargoes are to be presented for carriage, loaded, and, where necessary, trimmed only if lawful and harmless..."*

8. The Vessel was delivered to Jiangsu on DLOSP Changjiangkou, China, on April 17, 2020.

9. The Vessel proceeded to Newcastle Port, Australia, and loaded a cargo of 135,019 tonnes of Australian Thermal Coal on May 9, 2020 (the "<u>Cargo</u>"). A B/L was issued in respect of the Cargo on the Congenbill form.

10.     The Vessel proceeded to Fangcheng, China for discharge, arriving at Fangcheng on May 29, 2020.

11.     Upon arrival, the Vessel was not allowed to discharge the Cargo due to difficulty in obtaining a clearance from Customs.  The Vessel remained at anchorage until June 29, 2020, when the Master of the Vessel inquired of the local agent as to the reason for the delay, considering that vessels that arrived after May 29, and carrying the same type of cargo, were allowed to discharge.

12.     The local agent advised the Master of the Vessel that the Cargo was insufficient to meet the requirements for obtaining clearance.  The Cargo could not be discharged because of the absence of an import quota/license/allocation, or other necessary permission that is required to discharge the Cargo in China, and negotiations were underway with regard to obtaining the necessary Customs clearance and authorization required to move to berth and discharge the Cargo.

13.     Those negotiations dragged on and the Vessel has still not been called in to berth. Overall, there have been no berthing prospects for a period of over five (5) months.

14.     While the Vessel was at anchorage, the Cargo of coal aboard began emitting methane gas.  The methane levels were monitored by the crew, as they created the risk of explosion. By September 17, 2020, on at least ten separate occasions, the Cargo holds required ventilation to reduce the methane levels.  However, in ventilating the holds, oxygen is introduced and the gradual increase in oxygen content carries with it the risk of allowing the Cargo to self-heat. Self-heating of the Cargo creates a risk of combustion, which would require immediate action to remove the Cargo from the Vessel.

15. By loading an unlawful and dangerous cargo on the Vessel, Jiangsu breached Clause 35 of the Charter—SBCL clause and the International Maritime Sold Bulk Cargo Code clause—because the Cargo could not legally be discharged by the Vessel in China.

16. The shipment violated a law at the place of discharge, namely a prohibition of importing cargo without an import quota / licence / allocation, or other necessary permission, which has caused severe delay to the Vessel, and very significant and continuing losses to Link.

17. Link's claim is for damages in respect of the severe delay to the Vessel at the discharge port, Fangcheng, as a result of the absence of the necessary import license / quota for the Cargo.

18. As provided in the Charter Party, Link has initiated a London maritime arbitration against Jiangsu, demanding an award including the following:

    a. Damages at the contract versus market rate in the sum of $1,792,980.00 up to October 15, 2020 and increasing at a daily rate of $14,230.00 after that date, or such other sum as the tribunal may determine;

    b. Damages in the sum of $23,400.00 in respect of costs incurred to date as a result of the delay, or such other sum as the tribunal may determine;

    c. A declaration that Charterers are liable to pay for future costs caused by the delay;

    d. An indemnity in like amounts;

    e. Compound interest; and

    f. Costs.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Link demands security for such amounts, including through garnishment of Jiangsu's property pursuant to Supplemental Rule B, as set out below.

## COUNT I
## BREACH OF MARITIME CONTRACT

19. Link repeats the foregoing paragraphs as if fully set forth herein.

20. Jiangsu has breached its maritime contract with Link as set out more fully above.

21. Despite repeated demand, Link remains unpaid for amounts due as a result of Jiangsu's breach of a maritime contract, and further is unsecured for its arbitration in London of its demands against Jiangsu.

22. Link demands security for its London maritime arbitration, as well as payment of the amount of the arbitral judgment together with all interest, costs and attorneys' fees, as set forth more fully below.

## COUNT II
## MARITIME ATTACHMENT AND GARNISHMENT (RULE B)

23. Link repeats the foregoing paragraphs as if fully set forth herein.

24. Link has a *prima facie* valid admiralty claim.

25. Jiangsu cannot be located within the District within the meaning of Supplemental Rule B.

26. Jiangsu own tangibles or intangibles personal property located or soon to be located within this District. Specifically, Jiangsu's accounts held by Standard, which is located in this District.

27. Link seeks issue of process of maritime attachment so that it may obtain security for its claims against Jiangsu and ultimately payment of those claims from the security.

28. Jiangsu did not post any security for Link's claims.

## PRAYER FOR RELIEF

WHEREFORE, Link prays:

A. That, in response to **Count I**, this Court order the provision of security for the London maritime arbitration against Jiangsu Singapore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., in the amount of at least $8,689,550.59, detailed as follows:

| | | |
|---|---|---|
| Damages at the contract versus market rate up to October 15, 2020 | $ 1,792,980.00 | |
| Damages from October 16, 2020 to and including 31 December, 2021 | $ 6,289,660.00 | (442 days) |
| Damages in respect of costs incurred to October 15, 2020 as a result of delay | $ 23,400.00 | |
| Damages in respect of costs uncurred from October 16, 2020 to and including December 31, 2021 as the result of delay (est.) | $ 442,000.00 | (442 days) |
| Costs (including attorneys and arbitrators' fees) of the London Maritime Arbitration, and this case (est.) | $ 100,000.00 | |
| Interest on the amounts above, 2 years at current 3 month LIBOR rate | $ 41,510.59 | 0.24% |

**Total Security Demanded:   $     8,689,550.59**

B. That on provision of security, this Court stay this action pending the results of the London maritime arbitration, and then on issue of the arbitral judgment, payment from the security the amount of the arbitral judgment together with all interest, costs and attorneys' fees, in the amount of the arbitral judgment.

C.  That, in response to **Count II**, since Jiangsu cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Jiangsu tangible or intangible property or any other funds held by any garnishee, including the Garnishee, up to the amount of at least $8,689,550.59 as detailed above, to secure Link's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

D.  That this Court award Link such other and further relief that this Court deems just and proper.

Dated:   November 8, 2020.

    Respectfully submitted,

*/s/ Scott R. Wiehle*
Scott R. Wiehle
State Bar No. 24043991
scott.wiehle@kellyhart.com
Emily R. Steppick
emily.steppick@kellyhart.com
State Bar No. 24117095
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy: (817) 878-9280

J. Stephen Simms
(*pro hac vice* pending)
jssimms@simmsshowers.com
**SIMMS SHOWERS LLP**
201 International Circle, Suite 250
Baltimore, Maryland 21030
Telephone: (410) 783-5795
Facsimile: (410) 510-1789

ATTORNEYS FOR PLAINTIFF LINK INVESTMENT CO.

## **VERIFICATION**

I am a principal of Simms Showers LLP, counsel to Plaintiff Link Investment Co. ("Link"). There exists no officer of Link within this District to make this Verification, and Link has authorized me to make on their behalf. The facts alleged in the foregoing Complaint are true and correct to the best of my knowledge and information, which I derrived from both my investigation and the records I received from Link.

I further certify that, pursuant to Supplemental Rule B, I caused a search to be made of electronic records and Directory Assistance for contacts within this District or a corporate registration of an authorized agent of Defendant Jiangsu Steamship Pte Ltd ("Jiangsu") in the State of Texas to accept service of process in this District. Based on this search, Jiangsu does not have a registered agent within this District who is authorized to accept service of process on its behalf.

Pursuant to 28 U.S.C. § 1746(1), I certify under penalty of perjury that the foregoing is true and correct.

Executed November 8, 2020.

 */s/ J. Stephen Simms*
J. Stephen Simms
**SIMMS SHOWERS LLP**
201 International Circle
Baltimore, Maryland 21030
Telephone: (443) 290-8704
Fax: (410) 510-1789
jssimms@simmsshowers.com